# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JOHN DOE P.M., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 16-2315 |
| UNITED STATES OF AMERICA and | ) |
| MARK WISNER, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM AND ORDER

This case is one of nearly one hundred cases brought by veterans against the United States of America and Mark Wisner. The veterans involved—including plaintiff John Doe P.M.—sought treatment at the Dwight D. Eisenhower VA Medical Center ("VA") located in Leavenworth, Kansas. Wisner was a physician's assistant for the VA. In that capacity, Wisner treated and provided medical care for veterans, including plaintiff. But Wisner did not only provide medical care; on countless occasions, he also conducted improper and unnecessary physical examinations of the veterans' genitals and recta and made inappropriate sexual comments during medical appointments. Since the filing of these civil cases, Wisner has been convicted in the Leavenworth County District Court of criminal sodomy, aggravated sexual battery, and sexual battery. He is currently serving a sentence of over fifteen years in prison.

The court has already reviewed the allegations in this case (and all other connected cases) on a motion to dismiss filed by defendant United States. After considering that motion, the claims remaining in this case are (1) Count I: Medical Malpractice – Negligence; (2) Count II: Negligent Supervision; and (3) Count III: Outrage/Intentional Infliction of Emotional Distress. Like other

-1-

veterans treated by Wisner, plaintiff brings his claims against defendant United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 and 38 U.S.C. § 7316(a), (f).

This matter is before the court on defendant United States of America's Motion for Summary Judgment (Doc. 61). Defendant asks the court to grant summary judgment on several grounds: (1) Wisner was not acting within the scope of his employment; (2) because Wisner's actions were intentional, they are barred by the FTCA; (3) plaintiff did not administratively exhaust his negligent supervision claim; and (4) plaintiff's negligent supervision claim is barred by the FTCA's discretionary function exception. For the following reasons, the court denies the motion in part and grants it in part.

### I. Factual Background[1]

The uncontroverted facts in this case are disheartening. Unfortunately, they are nearly the same facts as those in the other related civil suits before this court. Highly summarized, Wisner was employed by the VA from September 28, 2008 through June 28, 2014. During that time, he saw between 750 to 1,000 patients. The VA employed Wisner, in part, to conduct physical examinations of patients, which may have involved sensitive, intimate, or uncomfortable matters. Wisner conducted medically-documented examinations of plaintiff in an exam room at the Leavenworth VA facility, while the facility was open and operating. Wisner's medically-documented genital exams were part of his overall physical examinations. At least some portions of the medical care that Wisner provided plaintiff was for a valid medical purpose—to provide diagnostic care. Other portions were not for valid medical purposes.

---

[1] The court's recitation of the uncontroverted facts is significantly shorter than the facts proposed by both parties, but particularly than the facts proposed by plaintiff. Many proposed facts are not material to the court's rulings here. And plaintiff made numerous citations to the allegations—as opposed to stipulations—in the pretrial order, which are not evidence. Plaintiff also at times did not cite to particular pages in the record and included full exhibits instead of relevant excerpts. Both practices are in violation of Fed. R. Civ. P. 56(c)(1) and D. Kan. R. 56.1, and the court has not considered facts cited in this manner.

According to medical records, plaintiff saw Wisner on multiple occasions between March 1, 2011 and April 19, 2014. The parties appear to assume that plaintiff was subjected to unnecessary and improper examinations of his genitals, although they do not specifically refer to direct evidence of these examinations.[2] Upon reviewing the excerpt of plaintiff's deposition provided by defendant, the court notes a description of at least one time Wisner examined plaintiff's genitals without gloves. (Doc. 62-6, at 12–13.) Plaintiff testified at his deposition that, at every visit, Wisner made a comment "remarking on the aesthetic appearance of [plaintiff's] penis. Wow, you've got a nice penis. Oh, I bet that really keeps the ladies smiling, keeps them up all night. Stuff like that." (*Id.* at 13.)

The record contains an OIG memorandum memorializing a January 23, 2015 interview with Wisner, conducted by OIG Special Agent Baker and Lt. Detective Joshua Patzwald of the Leavenworth County Sheriff's Office. The memorandum does not mention plaintiff's name; it contains primarily general statements. It was also written before plaintiff filed an administrative claim. The memorandum reflects the following "admissions" by Wisner:[3]

- Wisner crossed the professional line in providing purported genital exams to patients.
- Wisner knew that what he was doing to patients was wrong and that he lacked self-control.
- Wisner provided genital exams to satisfy his own curiosity.
- For his own pleasure, Wisner performed genital exams on patients when they were not medically indicated or necessary.

---

[2] Plaintiff did refer to the expert report of Dr. Thomas D. Kelley III, where Dr. Kelley recounts his understanding of the facts relating to plaintiff, which include genital examinations on nearly every visit. This is inadmissible hearsay. Nevertheless, because defendant does not dispute that Wisner subjected plaintiff to these examinations (and because the court independently found evidence of at least one examination in the record), the court proceeds on the assumption that they occurred.

[3] Note that these "admissions" have only been recorded in the OIG Memorandum of Interview. When Wisner appeared for deposition in these cases, he invoked his Fifth Amendment right to remain silent. Plaintiff argues that this entitles him to adverse inferences against the United States. Defendant responds that plaintiff has not identified the relevant factors for determining whether to apply an adverse inference. In any event, the court need not resolve this issue for purposes of its rulings here.

- Wisner chose his victims, who were attractive and had a similar body type.
- To avoid getting caught, Wisner falsified medical records, including failing to document multiple genital exams.

Wisner practiced under the supervision of various physicians. Dr. Daniel Cline was one of the collaborating physicians at the VA. Under VHA Directive 1063, Dr. Cline was responsible for providing clinical oversight, consultation, and patient care management assistance to Wisner. Dr. Cline and other collaborating physicians were responsible under the same directive for monitoring Wisner's clinical activities to ensure they were within the authorized scope of practice. And the Chief of Service at the VA was responsible for taking action to correct any discovered deficiencies in Wisner's practice.

As necessary, the court will incorporate additional uncontroverted facts throughout this Memorandum and Order.

## II. Standard of Review

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III. Discussion

### A. Scope of Employment

Defendant first argues that Wisner's conduct was not within the scope of his employment. The court addressed this issue previously, when ruling on defendant's motion to dismiss. Defendant argues that while plaintiff's allegations may have been enough to survive dismissal, the evidence produced

during discovery now conclusively shows that Wisner was not acting within the scope of his employment.

Under the FTCA, the United States is liable only for tortious acts committed by employees "acting within the scope of [their] office or employment." 28 U.S.C. § 1346(b)(1). "Scope of employment" is determined by the law of the place where the accident occurred. *Fowler v. United States*, 647 F.3d 1232, 1237 (10th Cir. 2011); *see also* 28 U.S.C. § 1346(b)(1). In Kansas, an employee acts within the scope of his employment when (1) he performs services for which he has been employed, or (2) he does anything reasonably incidental to his employment. *O'Shea v. Welch*, 350 F.3d 1101, 1103 (10th Cir. 2003) (citing Pattern Instructions Kansas 3d 107.06; *Williams v. Cmty. Drive-In Theater, Inc.*, 520 P.2d 1296, 1301–02 (Kan. 1974)). The test is not whether the employer expressly authorized or forbid the conduct. *Id.* Instead, the court asks whether the employer should have fairly foreseen the conduct from the nature of the employment and the duties relating to it. *Id.*; *see also Commerce Bank of St. Joseph, N.A. v. State*, 833 P.2d 996, 999 (Kan. 1992). Scope of employment is generally a factual determination, but the court may resolve this question as a matter of law when only one reasonable conclusion can be drawn from the evidence. *See Wayman v. Accor N. Am., Inc.*, 251 P.3d 640, 646 (Kan. Ct. App. 2011) (citing *O'Shea*, 350 F.3d 1101).

As he previously argued, plaintiff claims that Wisner's conduct was within the scope of his employment because it was a "slight deviation" from his duties. In *O'Shea v. Welch*, the Tenth Circuit reviewed the Kansas jury instruction on scope of employment, and determined that it is compatible with the slight deviation analysis. *O'Shea*, 350 F.3d at 1106. "Application of the slight deviation analysis allows for more flexibility and accuracy in the application of the law to each fact scenario. The Kansas pattern jury instruction[] . . . does not express a bright-line rule but instead illustrates a

type of slight deviation rule which requires a determination of what is reasonably incidental to employment and what conduct should have been fairly foreseen." *Id.*

Under the slight deviation analysis, an employee could pursue dual purpose ventures without the conduct amounting to an entire departure from the scope of employment. *Id.* at 1107. "An employee does not cease to be acting within the course of his employment because of an incidental personal act, or by slight deflections for a personal or private purpose, if his main purpose is still to carry on the business of his employer. Such deviations which do not amount to a turning aside completely from the employer's business, so as to be inconsistent with its pursuit, are often reasonably expected and the employer's assent may be fairly assumed." *Id.*

The court reviews the following factors to determine whether an employee has engaged in a slight or substantial deviation: (1) the employee's intent; (2) the nature, time, and place of the deviation; (3) the time consumed in the deviation; (4) the work for which the employee was hired; (5) the incidental acts reasonably expected by the employer; and (6) the freedom allowed the employee in performing his job responsibilities. *Id.* at 1108 (citation omitted).

Applying these factors, the court determines that an issue of fact remains as to whether Wisner engaged in a slight deviation. The court will not discuss full application of the factors here. Defendant bears the burden of showing it is entitled to summary judgment, and defendant has not discussed the factors in detail. Rather, defendant merely focuses on Wisner's intent and the fact that defendant did not hire Wisner to sexually molest patients—a fact that seems rather obvious. Defendant also discusses non-binding cases that made findings such as "an employer will not be held liable as a matter of law merely because the employment situation provided the opportunity for the servant's wrongful acts or the means to carry them out." *Bodin v. Vagshenian*, 462 F.3d 481, 486–87 (5th Cir. 2006); *see*

*also Barsamian v. City of Kingsburg*, 597 F. Supp. 2d 1054, 1068 (E.D. Cal. 2009) ("That the employment brought the tortfeasor and victim together in time and place is not enough.").

The error that defendant makes is treating the situation as if Wisner did not conduct the unnecessary and improper examinations in the context of a longer medical appointment. It is tempting to regard Wisner's conduct as non-incidental because of (1) the number of victims involved; (2) Wisner's conviction for the same conduct; and (3) Wisner's recorded admissions of intent. But the evidence shows a triable issue regarding whether Wisner's actions were incidental given the time, place, intent, and context of his improper actions. The court will make this determination at trial.

### B. Intentional Torts/VA Immunity

Defendant next argues that 28 U.S.C. § 2680(h) bars plaintiff's claims because the FTCA does not apply to claims arising out of a battery. The FTCA exempts from the waiver of sovereign immunity "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h). Under the FTCA's general provisions, the United States remains immune for claims arising out of these enumerated intentional torts. *See id.*

Again, however, plaintiff argues that the VA Immunity Statute applies, which essentially creates an "exception to the exception." This law allows for a remedy against the United States under the FTCA for damages arising from the provision of medical services by health care employees of the VA under 38 U.S.C. § 7316(a)(1), (f). *Ingram v. Faruque*, 728 F.3d 1239, 1245–46 (10th Cir. 2013) ("'[Section] 2680(h) does not bar application of the FTCA to [intentional] tort claims arising out of the conduct of VA medical personnel within the scope of' 38 U.S.C. § 7316(f).") (citation omitted).

Once again, the court determines that a genuine issue of fact remains as to whether the VA Immunity statute applies. In support of its argument, defendant primarily relies on Tenth Circuit law

identifying the purpose of the VA Immunity statute. In *Franklin v. United States*, 992 F.2d 1492, 1500 (10th Cir. 1993), the Tenth Circuit stated, "In some instances, State law characterize[d] an act of medical malpractice as an intentional tort, leaving VA medical personnel potentially liable for an action for which the law intends the Government to assume liability." *See* H.R. Rep. No. 100-191, 100th Cong., 2d Sess. 19 (1988), *reprinted in* 1988 U.S.C.C.A.N. 432, 450.

But while fixing an inconsistent tort-characterization problem may have been a driving force behind the VA Immunity Statute, the language of the statute itself does not limit its waiver to claims of medical battery. *See Ingram*, 728 F.3d at 1249. The statute covers any claim arising out of the provision of VA medical services—not just medical batteries:

> Although Congress was specifically concerned with medical battery, the remedy available under § 7316(f) is not limited to battery. Instead, by rendering 28 U.S.C. § 2680(h) inapplicable, § 7316(f) allows the United States to be sued for "assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights," . . . Thus, in the context of VA health care employees providing medical care or treatment, § 7416(f) provides a remedy under the FTCA for claims of intentional torts, including false arrest and false imprisonment.

*Id*.

Defendant also argues that even if the statute extends beyond medical battery, it still contains the requirement that any battery must be committed by VA personnel "in furnishing medical care or treatment." 38 U.S.C. § 7316(f). According to defendant, Wisner was most certainly not "furnishing medical care or treatment" when he sexually molested plaintiff. But once again, defendant would have this court, as a matter of law, look only at Wisner's discrete act of conducting improper genital and rectal examinations—not the surrounding actions of conducting a medical appointment. Despite Wisner's admissions during his OIG interview, there remains a gray area around what actions constituted providing medical care and what actions were entirely unnecessary and improper. In deciding what constitutes "furnishing medical care or treatment," the court does not use the Kansas test

-8-

for scope of employment; defendant is correct on this count. *But cf. Ingram*, 728 F.3d at 1248–49 (discussing relevant acts of VA employees as those taken "within the scope of their employment") (quoting *Franklin*, 992 F.2d at 1500). But this does not mean that, as a matter of law, Wisner's improper actions were not taken in the context of delivering medical care or treatment. This question is reserved for the court as the trier of fact.

### C. Administrative Exhaustion – Negligent Supervision

Defendant next argues that plaintiff failed to administratively exhaust his claim for negligent supervision. Plaintiff's SF-95 form only mentions Wisner's conduct—not any negligent supervision by those who supervised Wisner. Plaintiff responds that both this court and the VA have previously recognized a claim of negligent supervision in this case. In the VA's denial of plaintiff's SF-95 claim, plaintiff represents that the VA referenced a negligent supervision claim.[4] And the court did not previously sua sponte dismiss the negligent supervision claim for failure to exhaust.

"[A]lthough a plaintiff's administrative claim need not elaborate all possible causes of action or theories of liability, it must provide notice of the facts and circumstances underlying the plaintiff's claims." *Estate of Trentadue v. United States*, 397 F.3d 840, 853 (10th Cir. 2005) (internal quotations omitted). Plaintiff did not mention "negligent supervision" or any action/inaction of supervisors in his administrative claim. If this case were a stand-alone case (and not one of nearly one hundred similar cases), the government could have reasonably concluded that an investigation into the VA's supervisory actions was unnecessary. *Cf. Lopez v. United States*, 823 F.3d 970, 977 (10th Cir. 2016) ("Nothing in Lopez's administrative claim provided the government with notice that it needed to investigate whether the VA Hospital was negligent in credentialing and privileging Kindt, and it was in

---

[4] In support of this argument, plaintiff cites Exhibit W to his response memorandum. Exhibit W is not the denial of plaintiff's SF-95 form, and the court has not located the denial in the record. Even if the court assumes that the form reads as plaintiff represents, however, the content does not save plaintiff's claim.

-9-

turn deprived of any opportunity to settle this potential claim without litigation."). Of course, this is not a stand-alone case, and if the VA referenced a negligent supervision claim in its denial of plaintiff's claim, the VA likely did so because it had referenced a negligence supervision claim in most (if not all) other related denials. Nevertheless, plaintiff does not explain why the VA's interpretation of his claim should excuse his failure to identify the claim in his SF-95 form. For an FTCA claim, each individual claimant must exhaust his individual claims prior to suit. *Haceesa v. United States*, 309 F.3d 722, 734 (10th Cir. 2002). The court therefore determines that plaintiff failed to exhaust his negligent supervision claim, and grants summary judgment on this claim.

### D. Discretionary Function Exception

Finally, defendant asks the court to grant summary judgment on plaintiff's negligent supervision claim because defendant has not waived its sovereign immunity as to this claim. The court already determined that plaintiff failed to exhaust this claim. But, even if plaintiff had shown that the claim was effectively exhausted because the VA investigated it without prompting by plaintiff, the court addresses the validity of the claim below.

The discretionary function exception limits the FTCA's waiver of sovereign immunity when the governmental conduct at issue involves an element of judgment or choice. *See* 28 U.S.C. § 2680(a); *Franklin Sav. Corp. v. United States*, 180 F.3d 1124, 1130 (10th Cir. 1999). "[T]he discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Franklin Sav. Corp.*, 180 F.3d at 1130 (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). If the employee has no rightful option but to adhere to the directive, then sovereign immunity is waived and the court has jurisdiction to consider the case. *Id.*

The court performs a two-pronged analysis in determining whether defendant's conduct falls within the exception (the "*Berkovitz* test"). *Id.* First, the court decides whether the governmental conduct "is a matter of choice for the acting employee," because without an element of judgment or choice, conduct cannot be discretionary. *Id.* Specifically, the court considers if there is a federal statute, regulation, or policy "sufficiently specific [and mandatory] to remove decision[-]making under [it] from the discretionary function exception." *Elder v. United States*, 312 F.3d 1172, 1177 (10th Cir. 2002); *see also Franklin Sav. Corp.*, 180 F.3d at 1131. Second, if the conduct does involve judgment or choice, the court determines "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Franklin Sav. Corp.*, 180 F.3d at 1130. Congress's intent in maintaining governmental immunity for discretionary functions was to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id.* (quoting *Berkovitz*, 486 U.S. at 536–37).

The court strictly construes the discretionary function exception in favor of the United States. *United States Dep't of Energy v. Ohio*, 50 U.S. 607, 615 (1992). Plaintiff bears the burden of showing the discretionary function exception does not apply. *Hardscrabble Ranch, LLC v. United States*, 840 F.3d 1216, 1220 (10th Cir. 2016). And before the court applies the *Berkovitz* test, the court must define the harm-causing conduct. *Sydnes v. United States*, 523 F.3d 1179, 1183 (10th Cir. 2008); *see also Mahon v. United States*, 742 F.3d 11, 14 (1st Cir. 2014) (stating that "[a] court must first zero in on the conduct that supposedly caused the harm" when deciding whether the discretionary function exception applies). The exception does not apply when a discretionary decision essentially interrupts the causation between the alleged non-discretionary conduct and the plaintiff's injuries. *See Clark v. United States*, 695 F. App'x 378, 386 (10th Cir. 2017) ("To circumvent the discretionary function exception, the mandatory duty alleged must be one whose breach bears a causal relationship to the

-11-

Plaintiffs' injuries, thereby giving rise to their cause of action against the government.") (citing *Franklin Savings Corp.*, 180 F.3d at 1132–33); *Johnson v. U.S., Dep't of Interior*, 949 F.2d 332, 339–40 (10th Cir. 1991).

Plaintiff again argues that defendant lacked discretion in certain supervisory duties; VHA Directive 1063 mandates some discrete supervisory actions by Wisner's supervising physician. Specifically, VHA Directive 1063 required Wisner's supervising physician to (1) be in weekly contact to discuss clinical management issues and (2) review five randomly-selected patient encounter notes each quarter. The evidence before the court demonstrates that this was not done. When the court ruled on defendant's motion to dismiss, the court determined that plaintiff, by identifying these two mandatory duties, had sufficiently placed his negligent supervision claim outside the discretionary function exception. This is no longer the case.

Plaintiff brings this claim as a negligent supervision claim. And perhaps in a broad, generic sense, the VA did fail to adequately supervise Wisner. To a layperson, it certainly may seem so. But unfortunately, the court does not apply the standards of a layperson when deciding whether the United States has waived its sovereign immunity. Here, even if the United States effectively waived its immunity for actions that violated VHA Directive 1063—failing to be in weekly contact to discuss clinical management issues and failing to review five randomly-selected patient encounter notes each quarter—there is no evidence in the record that failing to take these non-discretionary actions was the cause of plaintiff's harm. There is no evidence in the record suggesting that completing either of these required tasks would have prevented plaintiff's harm.

Indeed, only a disciplinary action in response to weekly contact or review of patient encounter notes could have prevented plaintiff's harm. Disciplinary actions remain a discretionary decision; particular disciplinary actions are not required. *See* VHA Dir. 2004-029, at A-2 ("The Chief of Staff

-12-

(COS) is responsible for seeing that such reviews are conducted and for assuring that clinical service chiefs take *appropriate action* to correct discovered deficiencies.") (emphasis added); VHA Dir. 1063, at A-7 ("The Chief of Staff is responsible for ensuring that reviews are conducted and *action* is taken to correct any discovered deficiencies.") (emphasis added). These policies do not direct any specific discipline that must be taken. These policies—not the policies relating to contact and review—are the ones that are directly connected to plaintiff's harm.

Wisner's supervisor may not have followed the directives to have weekly contact with Wisner and review five patient encounter notes quarterly. But any action taken with respect to problems potentially discovered as a result was discretionary. *See Clark*, 695 F. App'x at 386 ("Even if the inspections might have revealed dangerous conditions, as the district court explained the Plaintiffs have identified only a *discretionary* duty or function to determine specifically how to remediate those specific conditions and thereby potentially avert their injuries."); *see also Mahon*, 742 F.3d at 15 (holding that the failure to require a risk-management assessment was not the relevant conduct to evaluate, because the government retained discretion whether to implement risk-management recommendations); *Gen. Dymanics Corp.*, 139 F.3d at 1285–86 (holding that the relevant act was the prosecution's discretionary decision to prosecute—not the prior act of negligently investigating and preparing a report that was relied on by the prosecution). And it is improper for plaintiff to attempt to isolate the non-discretionary duties (which lack direct causation) from the discretionary duties (for which there is evidence of causation). *See Johnson*, 949 F.2d at 339 ("The gathering of information from an individual reporting a potential problem and the communication between rangers is inextricably tied to the [discretionary] rescue decision."); *cf. Hardscrabble Ranch, LLC*, 840 F.3d at 1222 ("The existence of some mandatory language does not eliminate discretion when the broader

goals sought to be achieved necessarily involve an element of discretion.") (citation and internal quotation marks omitted).

Earlier in this case, the court applied *Johnson* to bar plaintiff's claims for negligent hiring and negligent retention. It is now clear that *Johnson* applies to plaintiff's negligent supervision claim, as well. Merely labeling the claim as one for negligent supervision does not mean that that harm stemmed from a failure to supervise; the court must look to the nature of the harm-producing agent. *See Fothergill v. United States*, 566 F.3d 248, 252 (1st Cir. 2009) ("[T]he applicability of the discretionary function exception turns on the nature and quality of the harm-producing conduct, not on the plaintiffs' characterization of that conduct."). Here, there is no genuine issue of material fact whether the non-discretionary conduct caused plaintiff's harm. The first step of *Berkovitz* is therefore not met.

Plaintiff makes a few additional arguments that the court did not address above. They do not change the outcome. First, plaintiff again argues that defendant had non-discretionary duties relating to hiring and retention. But the court already dismissed these claims. Second, plaintiff argues that the Kansas Physician Assistant Licensure Act provides non-discretionary duties. Again, the court already rejected this argument, as the duties must be federal—not state. And third, plaintiff claims that 38 U.S.C. § 1710 requires that the VA provide non-discretionary "competent medical services," citing *Jackson v. Kelly*, 557 F.2d 735, 738 (10th Cir. 1977) in support. But *Jackson* was not a negligent supervision case under the FTCA. Instead, *Jackson* was against the military physician himself for medical malpractice. Plaintiff has not shown how application of this statute and case extends to an action for negligent supervision.

As for the second step, the court has already held that personnel decisions such as employee discipline are the type of policy judgments intended to be addressed by the discretionary function

exception. *See*, *e.g., Anasazi v. United States*, No. 16-2227, 2017 WL 2264441, at *8 (May 23, 2017) (citing *Sydnes*, 523 F.3d at 1186). Plaintiff has not met his burden of showing that the decisions whether and how to discipline Wisner fall outside this general rule. Plaintiff bears the burden of doing so, and in the absence of such proof, the court must determine that defendant is entitled to sovereign immunity for this claim.

**IT IS THEREFORE ORDERED** that defendant's motion for summary judgment (Doc. 61) is denied in part and granted in part. The court grants summary judgment on plaintiff's claim for negligent supervision, but the remainder of the case will proceed to trial.

Dated this 6th day of January, 2020, at Kansas City, Kansas.

>   **s/ Carlos Murguia**
>   **CARLOS MURGUIA**
>   **United States District Judge**