## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JOHN DOE P.M.,

               Plaintiff,

v.

UNITED STATES OF AMERICA, et al.,

               Defendants.

Case No. 16-cv-2315-DDC

## PROPOSED FINDINGS OF FACT
## SUBMITTED BY DEFENDANT UNITED STATES OF AMERICA

Comes now Defendant the United States of America, by and through the undersigned

counsel of the United States Department of Justice, on September 18, 2020, and provides the

Court with the "Proposed Findings of Fact Submitted by Defendant United States of America."

As requested by the Court, the United States will file a separate legal memorandum.

## PROPOSED FINDINGS OF FACT

The United States submits the following proposed findings of fact.

**A.  Plaintiff's physical and mental health problems before ever seeing Mark Wisner**

1.  Plaintiff served on active duty in the United States Marine Corps from June 4, 2001 to
June 3, 2005.  *See* Pretrial Order, Dkt. No. 59, Stipulated Fact at p. 6, ¶ 2(b)(1).

2.  Upon release from active duty, Plaintiff served an additional four (4) years in the
Marine Corps Reserves and was Honorably Discharged on June 5, 2008.  *See* Pretrial
Order, Dkt. No. 59, Stipulated Fact at p. 6, ¶ 2(b)(1).

3.  Plaintiff received a combined service connected disability rating of 60 percent on
August 14, 2006, retroactive to June 4, 2005, for post traumatic stress disorder (30%),

nonepileptic seizures (20%), left rotator cuff tendonitis (10%), and degenerative arthritis, lumbosacral spine (10%). *See* USA Ex. 441.

4.  On March 1, 2010, Plaintiff's combined service connected disability rating increased to 80%, effective January 5, 2010, as a result of worsening of the following service connected conditions: degenerative arthritis, lumbosacral spine (rating increased from 10% to 40%, effective January 5, 2010), and post traumatic stress disorder (rating increased from 30% to 50%, effective January 5, 2010). *See* USA Ex. 443.

5.  On September 16, 2010, although Plaintiff's combined service connected disability rating remained 80%, Plaintiff was granted entitlement to the 100% service connected disability rating (a program known as "individual unemployability"), effective April 7, 2010, because Plaintiff's service connected post traumatic stress disorder renders him unemployable.  *See* USA Ex. 444; Rough Trial Tr. vol. 4, 164:10-20.

6.  Plaintiff's current combined service connected disability rating remains 80%, with compensation at a 100% rating under the "individual employability" program because of his service connected post traumatic stress disorder.  *See* USA Ex. 444; Rough Trial Tr. vol. 4, 104:12-15, 201:6-8.

7.  Plaintiff's mother explained he has been a drug addict since 2006, and that his drug addiction has caused a long history of interpersonal conflicts that predate any of Plaintiff's encounters with Mark Wisner.  Rough Trial Tr., vol 2, 33:25 – 34:18.

8.  Plaintiff's mother also explained that her son's drug addiction had resulted in multiple hospitalizations going back approximately 12 years, long before any encounter with Wisner.  Rough Trial Tr., vol 2, 38:22 – 39:19.

9. Plaintiff had multiple psychotic crises requiring both inpatient and outpatient treatment throughout 2010, the year prior to his first appointment with Mr. Wisner.  Rough Trial Tr., vol 2, 52:2 – 58:18.

10. Plaintiff's retained expert psychiatrist, Dr. Peterson, explained that prior to encountering Mr. Wisner, Plaintiff actively suffered extensively from PTSD, recurrent major depression, alcohol induced mood disorder, drug abuse, drug addiction, and hallucinations, all of which have plagued him since 2006.  Rough Trial Tr., vol. 3, 90:25 – 92:1.

**B.  Mark Wisner's employment at the Leavenworth VA**

11. Mark Wisner was hired by the Department of Veterans Affairs ("VA") in 2008 as a Physician Assistant ("PA").  See Pretrial Order, Dkt. No. 59, Stipulated Fact at p. 3, ¶ 2(a)(1).

12. A PA at the VA is employed to administer basic medical care and screening to veteran patients.  *See generally, e.g.*, Pl.'s Ex. 59.

13. A PA's medical care and screening includes performing genital examinations when they are clinically indicated.  See Rough Trial Tr. vol. 1, 52:17-20.

14. A PA's medical care and screening does not include sexually molesting or assaulting patients.  *See* Rough Trial Tr. vol. 3, 114:23-25.

15. The VA removed Wisner from patient care and placed him on Administrative Leave on May 19, 2014, following a report to the VA police that Wisner sexually assaulted a patient during an appointment.  *See* Pretrial Order, Dkt. No. 59, Stipulated Fact at p. 3, ¶¶ 2(a)(2), 2(a)(3); USA Ex. 406 at WIS00034901 & WIS00034996.

16. Wisner remained on Administrative Leave until June 28, 2014, when he voluntarily retired from the VA based on his eligibility under the laws at that time. *See* Pretrial Order, Dkt No. 59, Stipulated Fact at p. 3, ¶ 2(a)(1).

**C.  Plaintiff's claims are based solely upon Mark Wisner's intentional sexual molestation**

17. An FTCA award cannot be made against an agency generally, only for the damage caused by a federal employee, and here the only such employee is Mark Wisner. 28 U.S.C. § 1346(b).

18. On March 17, 2015, Plaintiff filed an administrative claim with the Department of Veterans Affairs, wherein he stated that he was "subject to several intentional and/or negligent sexual advances, assaults, and comments by Mark Wisner, PA." *See* SF-95 (USA Ex. 400) at WIS00021301; Pretrial Order, Dkt. No. 59, Stipulated Fact at p. 8, ¶ 2(b)(22).

19. Plaintiff's administrative claim does not mention wrongful conduct by anyone other than Wisner. *See* SF-95 (USA Ex. 400).

20. Plaintiff's administrative claim does not mention negligent prescription by Wisner. *See* SF-95 (USA Ex. 400).

21. Plaintiff has conceded that he is not asserting a separate claim for "Wisner's prescription practices." *See* Pl's. Resp. to USA Mot. in Limine No. 2 (ECF No. 102) at 3.

22. As this Court has ruled previously, there is no claim in this case by plaintiff for negligent hiring, negligent retention or negligent supervision of Mr. Wisner by other VA employees. Summary Judgment Order, January 6, 2020, Dkt. No. 73, at 10, 14.

23. On May 17, 2016, Plaintiff filed the instant lawsuit, wherein he alleged that Wisner "wrongfully subject[ed] Plaintiff to inappropriate sexual comments and inappropriate physical examinations." *See* Cmpl. (Dkt. No. 1) ¶ 17.

24. Plaintiff filed the operative complaint on October 10, 2016, wherein he alleged that Wisner "conducted numerous genital examinations of Plaintiff without using medical gloves, repeatedly fondled John Doe P.M.'s genitals, and made inappropriate comments regarding John Doe P.M.'s penis." *See* Sec. Am. Cmpl. (Dkt. No. 26) ¶ 19.

25. Wisner "sexually molested" Plaintiff. *See* Pretrial Order, Dkt. No. 59, Pl.'s Factual Contentions at p. 20, ¶ 3(a) (Pl.'s Factual Contentions).

26. Wisner "sexual[ly] exploit[ed]" Plaintiff. *See* Pretrial Order, Dkt. No. 59, p. 22, ¶ 3(a) (Pl.'s Factual Contentions).

27. Wisner "manipulated their mutual military service to disarm [Plaintiff] so [Wisner] could use the genital exams to satisfy himself." *See* Pretrial Order, Dkt. No. 59, pp. 21-22, ¶ 3(a) (Pl.'s Factual Contentions).

28. Wisner's "degrading" touching of Plaintiff's genitals was "consistent with [Wisner's] predatory history" and Wisner's "modus operandi." *See* Pretrial Order, Dkt No. 59, p. 19, ¶ 3(a) (Pl.'s Factual Contentions).

29. Plaintiff's alleged harm manifested as a result of learning that Wisner's touching of Plaintiff's genitals was not medical care but rather sexual molestation and sexual abuse. *See, e.g.*, Rough Trial Tr. vol. 2, 104:19-21, 116:7-13; Rough Trial Tr. vol. 3, 114:23-25; Rough Trial Tr. vol. 4, 89:25-90:6, 195:14-17.

**D.  Wisner's intentional sexual molestation of Plaintiff**

**30.** There is never a medical purpose to sexually molest a patient. *See* Leininger Rough Trial Tr. vol. 3 (Nicholson Testimony), 251:7-9.[1]

**31.** Sexually assaulting a patient is inconsistent with the practice of medicine.  Rough Trial Tr. vol. 1, 198:11-13.

**32.** There is never a medical purpose to sexually assault a patient.  Rough Trial Tr. vol. 1, 198:14-18; Leininger Rough Trial Tr. vol. 3 (Nicholson Testimony), 251:4-6.

**33.** Sexual assault is not medical care.  Rough Trial Tr. vol. 3, 114:23-25.

**34.** Mark Wisner intentionally sexually assaulted Plaintiff.  *See* Rough Trial Tr. vol. 4, 165:24-166:4.

**35.** Mark Wisner sexually assaulted Plaintiff each time he performed a genital exam, which was at all of Plaintiff's appointments with Wisner at the VAMC, except the last appointment on April 19, 2014.  Pretrial Order, Dkt. No. 59, Stipulated Facts at pp. 6-7, ¶¶ 2(b)(6), 2(b)(7), 2(b)(10); Rough Trial Tr. vol. 1, 86:15-19, 198:2-10; Rough Trial Tr. vol. 4, 173:8-10.

**36.** Wisner first sexually assaulted Plaintiff on March 1, 2011, the date of Plaintiff's first appointment with Wisner.  *See* Pretrial Order, Dkt. No. 59, Stipulated Fact at p. 6, ¶ 2(b)(6); Rough Trial Tr. vol. 1, 198:2-10.

---

[1] In the interest of efficiency, in lieu of presenting Jeffrey Nicholson again for live testimony in this trial, the parties stipulated that the trial testimony of Jeffrey Nicholson from July 8, 2020, in the trial of *Leininger v. United States*, No. 16-cv-2627 (D. Kan.), along with any exhibits entered through his testimony, and any objections and rulings, applies equally to this case.  *See* Rough Trial Tr. vol. 5, 75:7-76:10 (Stipulation).  For purposes of these proposed findings of fact, the United States will cite to Mr. Nicholson's testimony as follows: "Leininger Rough Trial Tr. vol. 3 (Nicholson Testimony), [page]:[line]."

37. Mark Wisner sexually assaulted Plaintiff when he performed "genital examinations" without wearing gloves. Rough Trial Tr. vol. 1, 198:2-10.

38. Mark Wisner did not wear gloves during any of the genital exams he performed on Plaintiff. *See* Rough Trial Tr. vol. 1, 87:2-9.

39. There is never a medical purpose for not wearing gloves during a genital examination. *See* Rough Trial Tr. vol. 1, 200:23-25; Leininger Rough Trial Tr. vol. 3 (Nicholson Testimony), 205:22-25 & 206:7-14.

40. Mark Wisner sexually assaulted Plaintiff by performing ungloved genital exams that were excessively long. Rough Trial Tr. vol. 1, 100:2-7, 198:2-10, 201:4-10.

41. All of the genital exams Mark Wisner performed on Plaintiff were ungloved and excessively long. Rough Trial Tr. vol. 1, 100:2-7, 201:1-13.

42. There was no medical purpose for the excessive length of Wisner's genital exams of Plaintiff. Rough Trial Tr. vol. 1, 201:14-17.

43. Wisner cupped Plaintiff's scrotum and used his thumb to stroke Plaintiff's penis. *See* Rough Trial Tr. vol. 4, 136:21-137:11; OIG Memo. for the Record, Sept. 24, 2014 (USA Ex. 406 at WIS00034943; Pl's Ex. 17 at WIS00034943).

44. Cupping a patient's scrotum or stroking a patient's penis is not medical care. *See* Rough Trial Tr. vol. 3, 113:21-114:7.

45. Wisner's genital examinations of Plaintiff did not serve a medical purpose, and instead were conducted to satisfy Wisner's own sexual curiosities and pleasure. *See, e.g.*, Leininger Rough Trial Tr. vol. 3 (Nicholson Testimony), 187:6-23, 202:25-203:23, & 205:9-13; OIG Memo. of Interview, Jan. 23, 2015 (USA Ex. 406 at WIS00034987-

WIS00034988); OIG Memo. for the Record, Sept. 24, 2014 (USA Ex. 406 at WIS00034943; Pl's Ex. 17 at WIS00034943); Rough Trial Tr. vol. 4, 137:12-19.

46. Wisner made unnecessary and inappropriate sexualized comments to Plaintiff during the exams regarding Plaintiff's penis and the sexual satisfaction of Plaintiff's sexual partner.  Rough Trial Tr. vol. 1, 113:18-22.

47. Wisner's unnecessary and inappropriate sexualized comments to Plaintiff during the exams regarding Plaintiff's penis and the sexual satisfaction of Plaintiff's sexual partner did not serve a medical purpose.  Rough Trial Tr. vol. 1, 113:18-24, 201:18-202:14.

48. On or about August 15, 2014, the VA sent out a broadly-worded questionnaire to Wisner's patients inquiring about genital examinations they received at the VA.  *See* Rough Trial Tr. vol. 4, 173:25-174:3; USA Ex. 406 at WIS00034954.

49. Plaintiff first realized that Wisner had sexually assaulted him when he received the VA OIG letter in August of 2014.  *See* Rough Trial Tr. vol. 3, 58:13-18; Rough Trial Tr. vol. 4, 173:25-174:3.

50. The first time Plaintiff decided to contact an attorney about Wisner's conduct was also in August of 2014.  *See* Rough Trial Tr. vol. 4, 174:4-:6.

51. On or about January 23, 2015, VA Office of Inspector General ("OIG") Special Agent Kerry Baker and Lt. Detective Joshua Patzwald of the Leavenworth County, Kansas Sheriff's Office, interviewed Wisner at Wisner's residence, and Wisner indicated that he crossed the professional line and was excessive in providing purported genital examinations.  *See* OIG Memo. of Interview, Jan. 23, 2015 (USA Ex. 406 at WIS00034987).

52. On or about January 23, 2015, during an interview with OIG Special Agent Baker and Lt. Detective Patzwald, Wisner indicated that he knew that what he was doing to his patients was wrong and that he had no self-control.  *See* OIG Memo. of Interview, Jan. 23, 2015 (USA Ex. 406 at WIS00034987).

53. On or about January 23, 2015, during an interview with OIG Special Agent Baker and Lt. Detective Patzwald, Wisner indicated that he provided genital examinations to his patients to satisfy his own curiosity.  *See* OIG Memo. of Interview, Jan. 23, 2015 (USA Ex. 406 at WIS00034987).

54. On or about January 23, 2015, during an interview with OIG Special Agent Baker and Lt. Detective Patzwald, Wisner indicated that all of his behavior was simply to satisfy his curiosity.  *See* OIG Memo. of Interview, Jan. 23, 2015 (USA Ex. 406 at WIS00034987).

55. On or about January 23, 2015, during an interview with OIG Special Agent Baker and Lt. Detective Patzwald, Wisner indicated that he performed genital "examinations" on his patients where they were not medically indicated or necessary, and that he did so for his own pleasure.  *See* OIG Memo. of Interview, Jan. 23, 2015 (USA Ex. 406 at WIS00034988).

56. On or about January 23, 2015, during an interview with OIG Special Agent Baker and Lt. Detective Patzwald, Wisner acknowledged that he chose his victims, and that his victims were all attractive and of a similar body type.  *See* OIG Memo. of Interview, Jan. 23, 2015 (USA Ex. 406 at WIS00034988).

57. Wisner admitted that he took active steps in order to avoid getting caught, specifically, he falsified medical records, including by failing to document multiple genital

examinations. *See* OIG Memo. of Interview, Jan. 23, 2015 (USA Ex. 406 at WIS00034987-89); KSBHA Consent Order (Pl.'s Ex. 129 ¶ 35); Sec. Am. Compl. (Dkt. No. 26) ¶ 32.

58. Wisner "intentionally chose not to document all of his patient encounters in an effort to avoid detection." Pretrial Order, Dkt. No. 59, at p. 18, ¶ 3(a) (Pl.'s Factual Contentions).

59. On or about February 10, 2015, Wisner entered into a Consent Order with the Kansas State Board of Healing Arts wherein he surrendered his license to practice as a PA. *See* Pretrial Order, Dkt. No. 59, Stipulated Fact at p. 3, ¶ 2(a)(4); KSBHA Consent Order (Pl's Ex. 129).

60. In the Consent Order filed on or about February 10, 2015, Wisner admitted that he "used his position as a Physician Assistant at the Dwight D. Eisenhower VA Medical Center in Leavenworth, Kansas to commit sexual battery crimes against veteran patients," *to include Plaintiff*. *See* KSBHA Consent Order (Pl's Ex. 129) ¶ 11; Sec. Am. Cmpl. (Dkt. No. 26) ¶ 29 (emphasis added).

61. In the Consent Order filed on or about February 10, 2015, Wisner admitted that he "repeatedly sexually assaulted" his patients, "had inappropriate sexual contact" with his patients, and "made inappropriate sexual comments" to his patients. *See* KSBHA Consent Order (Pl's Ex. 129) ¶ 33); Sec. Am. Cmpl. (Dkt. No. 26) ¶ 32.

62. On or about September 24, 2014, Plaintiff gave a statement to OIG Special Agent Kerry Baker wherein Plaintiff stated that Wisner conducted genital exams without gloves. *See* OIG Memo. for the Record, Sept. 24, 2014 (USA Ex. 406 at WIS00034943; Pl's Ex. 17 at WIS00034943).

63. On or about September 24, 2014, Plaintiff told Agent Baker that he did not believe Wisner conducted a true medical exam whatsoever. *See* OIG Memo. for the Record, Sept. 24, 2014 (USA Ex. 406 at WIS00034943; Pl's Ex. 17 at WIS00034943).

64. On or about September 24, 2014, Plaintiff told Agent Baker that he believes this was all for Wisner's sexual gratification, referring to the genital exams. *See* OIG Memo. for the Record, Sept. 24, 2014 (USA Ex. 406 at WIS00034943; Pl's Ex. 17 at WIS00034943); Rough Trial Tr. vol. 4, 137:12-19.

65. In August 2017, a Leavenworth County Jury found Wisner guilty of aggravated criminal sodomy, aggravated sexual battery, and three other counts of sexual battery, stemming from Wisner's treatment of veteran patients at the VAMC. *See* Pretrial Order, Dkt. No. 59, Stipulated Fact at p. 3, ¶ 2(a)(5); USA Ex. No. 406.

66. As a result of the 2017 conviction, Wisner was sentenced to 15 years and seven months in prison, and he is currently imprisoned. *See* Pretrial Order, Dkt. No. 59, Stipulated Fact at p. 3, ¶ 2(a)(6).

**E. Plaintiff's current mental health condition does not demonstrate any harm from his interactions with Mark Wisner**

67. Plaintiff testified that he is now 17 months clean and sober, his longest period of sobriety since 2006. Rough Trial Tr., vol 4, 189:19 – 190:3

68. Plaintiff, who since 2010 had been affirmed by the VA as 100 percent unemployable because of his service-connected mental health conditions, has been employed full-time since March 2019, earning $52,000 annually, supervising 300 call center employees and 12 direct reports. Rough Trial Tr., vol. 4, 159:16-160:8.

69. Plaintiff testified that currently his mental health is the best that it has been in the last 20 years. Rough Trial Tr. vol. 4, 190:1-3.

70. Plaintiff testified that he came to this state of recovery by finally addressing the substance addiction that has plagued him for the past 15 years, and that he did so at the VA.  Rough Trial Tr. vol. 4, 158:1-8.

**F. Plaintiff has offered inconsistent testimony as to when he was allegedly harmed by Wisner's actions**

71. Plaintiff's mother, who testified first, claimed that Plaintiff was "getting better" in 2010 and then everything fell apart after he encountered Wisner in 2011.  Rough Trial Tr. vol. 2, 15:22 – 16:2.

72. Plaintiff's mother testified that Plaintiff declined rapidly from 2012 to 2014, and those were the worst years of her life because of it.  Rough Trial Tr. vol. 2, 26:1-5.

73. However, as the medical records showed, Plaintiff was far from "doing well" in 2010 – he was in crisis throughout that year, and in September of 2010, the VA affirmed his claim that he was unemployable due to his PTSD symptoms.  USA Ex. 444; Rough Trial Tr. vol. 4, 164:10-20.

74. Plaintiff's expert psychiatrist, Dr. Peterson, confirmed that, contrary to Plaintiff's mother's testimony, Plaintiff told him that he was doing well in the Spring of 2013, when he was earning a 3.87 GPA in college and made the Dean's list.  Rough Trial Tr. vol. 3, 74:13-21.

75. Plaintiff himself testified that he didn't know Mr. Wisner had acted in any way inappropriately during all of his appointments with him until August of 2014, when he received the letter from the OIG notifying him of its investigation.  Rough Trial Tr. vol. 4, 173:25 – 174:3.

76. Plaintiff felt no harm from his encounters with Wisner until August 2014, when he learned of Wisner's crimes.  Rough Trial Tr. vol. 4, 173:25 – 174:3; Rough Trial Tr., vol., 3, 76:10 – 76:21.

**G.  Plaintiff's claims for private health insurance and future medical care are belied by the evidence**

77. Plaintiff seeks a damages award that includes the cost of a lifetime of private healthcare treatment, notwithstanding that his own expert, Dr. Ward, explained that no healthcare is as good as that provided by the VA.  Rough Trial Tr. vol. 4, 17:19-20.

78. Dr. Peterson's direct testimony and opinions were based on his review of records, his examination of Plaintiff on November 6, 2018, and summarized in his report dated March 20, 2019; he had no information regarding Plaintiff's treatment and recovery since March, 2019.  Rough Trial Tr., vol. 3, 72:13 – 73:7.

79. Dr. Peterson was apparently so surprised to learn of Plaintiff's 2019 treatment and recovery during his testimony on Day 2 of the trial, that he admitted during cross-examination on Day 3 of the trial that he had spoken to Plaintiff "last night," *i.e.*, in the middle of his testimony. Rough Trial Tr., vol. 3, 210:19 – 211:15.

80. Plaintiff's medical records and testimony confirm that he failed to identify, or even mention, any problems resulting from his encounters with Wisner, despite regular monthly psychotherapy therapy sessions beginning in 2013 until October 2017, more than 3 years after his last appointment with Wisner.  Rough Trial Tr. vol. 4, 175:3-16.

81.  Plaintiff has sought no additional psychotherapy from anyone at the VA or elsewhere to address his mental health conditions since March of 2018.  Rough Trial Tr. vol. 4, 177:2-6.

82. The evidence shows that Plaintiff not only can go to the VA for treatment, he has gone back – many times for years after Wisner – without any evidence of adverse effects, and that VA treatment has helped him to control the afflictions that have plagued him for 15 years such that he is now the best he has been in 20 years.  Rough Trial Tr. vol. 4, 190:1-3.

83. Plaintiff testified that despite multiple offers of therapy by the VA, he has not tried to reestablish with a therapist.  Rough Trial Tr. vol. 4, 177:2-22.

84. Plaintiff could obtain VA Choice coverage to allow him to see a private doctor, a program into which he was accepted in June 2015, however, he did not obtain the treatment.  USA Ex. 436, p. 21985; Rough Trial Tr. vol. 4, 180:15-22.

85.  At trial, Plaintiff failed to present any testimony from the many healthcare providers, at the VA and several private facilities, who have treated him over the years to address whether he suffered an exacerbation of his disabling pre-existing mental health conditions.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

Dated: September 18, 2020

Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

JAMES G. TOUHEY, Jr.
Director, Torts Branch

CHRISTOPHER R. BENSON
Assistant Director, Torts Branch

s/ Sarah E. Haston
_____
SARAH E. HASTON
*Counsel for Defendant United States*
Trial Attorney
United States Department of Justice
Civil Division, Torts Branch
P.O. Box 888
Washington, D.C. 20044-0888
sarah.e.haston@usdoj.gov
Tel/Fax: (202) 616-4233 / 5200

## CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2020, the foregoing Proposed Findings of Fact Submitted by Defendant United States of America was electronically filed with the clerk of the court by using CM/ECF system which will send a notice of electronic filing to the following:

J'Nan Kimak
jck@hfmlegal.com

Michael Kilgore
msk@hfmlegal.com

Daniel Thomas
dat@hfmlegal.com

*Attorneys for Plaintiff*


I further certify that on this date the foregoing document and the notice of electronic filing were mailed by first-class mail to the following non-ECF participants:

Mark E. Wisner
*Defendant Pro Se*
KDOC # 0117741
P.O. Box 546
Norton, KS 67654-0546

s/ Sarah E. Haston
_____
SARAH E. HASTON
*Counsel for Defendant United States*