IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JOHN DOE P.M.,

    Plaintiff,

    v.

UNITED STATES OF AMERICA AND
MARK WISNER,

    Defendants.

Case No. 16-2315-DDC

### MEMORANDUM AND ORDER

During trial, plaintiff John Doe P.M. objected to seven overlapping subjects of expert testimony by defendant United States of America's expert witness, Dr. Alan Abrams. The court deferred ruling so that defendant could: (a) provide the court with Dr. Abrams's expert witness disclosure under Fed. R. Civ. P. 26(a)(2)(B); and (b) specify the portions of that disclosure providing notice of the challenged opinions. At the close of all evidence, the court advised the parties that they could file written briefing about these objections. The court has considered the parties' arguments and now is ready to rule plaintiff's seven objections.

<u>First Challenge</u> (recent substance abuse treatment): Plaintiff first objected to Dr. Abrams opining that plaintiff's recent substance abuse treatment has "led to almost miraculous improvement." Dr. Abrams went on to opine that plaintiff had followed the recommendation of Dr. Abrams, which had resulted in plaintiff's success. Defendant doesn't suggest that this opinion was previously disclosed; instead, defendant argues that Dr. Abrams was justified in offering his follow-up opinion because plaintiff failed to supplement discovery to reveal that he had received treatment and was gainfully employed. According to defendant, the untimely

disclosure was "substantially justified" under Rule 37(c) because defendant had no knowledge of the evidence until after discovery had closed.

In determining whether an undisclosed opinion is substantially justified, the court exercises its discretion, applying the following factors: "1) the prejudice or surprise to the party against whom the testimony is offered; 2) the ability of the party to cure the prejudice; 3) the extent to which introducing such testimony would disrupt the trial; and 4) the moving party's bad faith or willfulness." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).

These factors all favor defendant. Plaintiff should not have been surprised; plaintiff failed to supplement discovery to disclose the information about his treatment and employment before trial. Plaintiff had every opportunity to cure any prejudice through cross-examination. There was no disruption to trial. Finally, it does not appear that either party acted willfully; this was not a stand-alone case, and both parties had multiple related cases they were monitoring and preparing. The information should have been shared before trial. But the court does not find that the failure to do so was willful.

The court therefore allows the challenged testimony about plaintiff's treatment and recovery. As plaintiff points out, the court has no information about whether the treatment program that plaintiff has been using is, indeed, similar to the recommendation of Dr. Abrams. That fact goes to the weight of the evidence, and the court will weigh it accordingly.

Second Challenge (degrees of assault and injury): Next, plaintiff objected to Dr. Abrams's opinion that there are varying degrees of sexual assault, using this opinion as a basis to explain why any physical or emotional damage to plaintiff was minimal. Dr. Abrams previously disclosed that he believes plaintiff's injuries, at worst, are minimal. But his report does not

2

disclose that the explanation for plaintiff's injury as a minimal one is because there are varying degrees of sexual assault. What is missing from Dr. Abrams's disclosure is explicitly required by Rule 26(a)(2)(B), *i.e.*, "a complete statement of all opinions the witness will express and the basis and reasons for them." Dr. Abrams's report does not identify the varying degrees of assault as a reason why plaintiff sustained minimal injury, at worst.

Given defendant's failure to connect the expert's opinion with his "basis and reasons for [it]," the court sustains plaintiff's objection. And under Fed. R. Civ. P. 37(c), the court thus strikes from the trial record Dr. Abrams's testimony explaining the various degrees of sexual assault. Dr. Abrams's testimony that plaintiff's injury was—at worst—minimal, however, was properly disclosed.

<u>Third, Fifth, and Seventh Challenges</u> (P.M.'s ability to return to the VA): Plaintiff's third, fifth, and seventh objections all broadly arise from the same category of testimony—Dr. Abrams opines that plaintiff can return (and observed that plaintiff *has* returned) to the VA for treatment. The third objection was Dr. Abrams's testimony that the VA offered "extraordinarily excellent experience" to veterans like plaintiff. Plaintiff also objected to defense counsel's question whether there was any psychological condition that prevents plaintiff from returning to the VA for treatment. Dr. Abrams's opinion about the quality of care at the VA was not previously disclosed. But he didn't even answer counsel's question about psychological impairments; instead, Dr. Abrams stated, as a fact, that plaintiff had returned to the VA. The court strikes the testimony about the quality of care at the VA, but allows Dr. Abrams's comments on the fact that plaintiff has returned to the VA. This is not an opinion, but merely a factual observation.

Plaintiff's fifth objection arises out of defense counsel's question, "So do you agree with Dr. Peterson just on a factual basis that the plaintiff has been unable to re-establish a meaningful treatment alliance?" Defendant claims that the topic was disclosed, referencing the following language in Dr. Abrams's report:

> [Plaintiff] was in hospitals or substance rehab programs for much of 2013 and 2014, prior to August, with much attention to his mental states, and encouragement to talk about his life. [Plaintiff] was able to talk about being sexually molested by his sister to a therapist. There is no credible explanation to explain why [plaintiff] would have failed to mention his experiences with Mr. Wisner, if they did occur and were at all traumatic.

(Abrams Report at 124.) But this excerpt never references plaintiff's ability to re-establish a meaningful therapeutic alliance. At most, it has a tangential connection to the question asked. But the court is uncertain what part of Dr. Abrams's answer to strike, as it, in the main, just fails to respond to the question. Nevertheless, because defendant has not identified any part of Dr. Abrams's report that discloses an opinion whether plaintiff has been unable to re-establish a meaningful treatment alliance, the court strikes both the question and the answer from the trial record.

Plaintiff's seventh objection challenges defense counsel's question whether there was any reason plaintiff could not receive therapy at the VA. Defendant did not respond to this objection in its brief, so the court sustains plaintiff's objection.

<u>Fourth Challenge</u> (Dr. Peterson's methodology): Plaintiff objected to Dr. Abrams's testimony that Dr. Peterson's methodology was to "say what the plaintiff's attorney paid him to say." In this same answer, Dr. Abrams also opined that Dr. Peterson ignored records and believed whatever plaintiff said. Dr. Abrams's report notes that Dr. Peterson failed to refer to the records. He also criticized how Dr. Peterson blindly accepted plaintiff's accounts of events. But Dr. Abrams exceeded the scope of his disclosed opinions when he accused Dr. Peterson of

4

saying what he was "paid to say."  This was not a proper expert opinion (to the extent that it was an opinion at all), and the court strikes it from the trial record.

Sixth Challenge (seizure related to sex):  When responding to this objection, defendant assumed that plaintiff had objected to Dr. Abrams's testimony that opioid users often suffer erectile dysfunction.  But the question before Dr. Abrams when plaintiff objected asked whether plaintiff had experienced problems with sexual relationships long before he met Mark Wisner.  To be fair, it is unclear which part of Dr. Abrams's lengthy answer is challenged by plaintiff's objection.  But now, plaintiff clarifies that counsel objected to Dr. Abrams opining about an alleged causal connection between sex and plaintiff's seizures.  Defendant never directed the court to where, in Dr. Abrams's 126-page report, this opinion was disclosed.  The court nevertheless reviewed the report and found a reference to plaintiff having seizure-like movement during sex in December 2001 on page 17.  But this reference was provided under a section titled "Significant Content in the Records Reviewed" and was not connected to any opinion that having sex in 2001 caused a stress-related seizure.  Defendant failed to disclose this opinion.  Consistent with Fed. R. Civ. P. 37(c), defendant, as the party failing to make the required disclosure, may not "use that information" at trial.  The court strikes this portion of Dr. Abrams's testimony from the record evidence.

Conclusion:  A final word about the rulings contained in this Order.  The court finds the outcome of all seven objections to be immaterial to its Rule 52 decision.  Even if the court had found that Dr. Abrams disclosed all of the challenged opinions, it would not affect the ultimate outcome of the case.  Overall, the court found the testimony of Dr. Peterson and plaintiff himself more persuasive than the testimony by Dr. Abrams, so in most instances where they differ in opinion, the court has given the opinions of Dr. Peterson and plaintiff more weight.  This does

not mean that Dr. Abrams is unqualified or lacks credibility on all matters.  But the matters that are the subject of this Order are immaterial to the court's final Rule 52 findings and conclusions.

**IT IS SO ORDERED.**

**Dated this 2nd day of November, 2020, at Kansas City, Kansas.**

                                            **s/ Daniel D. Crabtree**
                                            **Daniel D. Crabtree**
                                            **United States District Judge**